BRUCE SCOTT BENJAMIN,

        Plaintiff,

v.                                      Case No. 3:18-cv-10-J-JRK

ANDREW M. SAUL,[1]
Commissioner of Social Security,

        Defendant.

_____

## OPINION AND ORDER[2]

### I. Status

Bruce Scott Benjamin ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying his claim for disability income benefits ("DIB"). Plaintiff's alleged inability to work is the result of issues with his neck, mid back, and shoulders; an injury to his mid and lower back; scoliosis in the neck; arthritis in the neck and back; dyslexia; "numbness, pain and tingling in legs"; depression; and post-traumatic stress disorder. See Transcript of Administrative Proceedings (Doc. No. 14; "Tr." or "administrative transcript"), filed June 18, 2018, at 85, 93, 209 (emphasis omitted).

---

[1]    Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Nancy A. Berryhill as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 13), filed June 18, 2018; Reference Order (Doc. No. 15), entered June 19, 2018.

Plaintiff filed an application for DIB on December 2, 2013. Tr. at 167.[3] He alleged a disability onset date of December 13, 2006. Tr. at 85. The application was denied initially, Tr. at 85-91, 92, 102, 103-05, and upon reconsideration, Tr. at 93-100, 101, 111-15, 116.

On February 5, 2016, an Administrative Law Judge ("ALJ") held a hearing, during which she heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 41-84. At the hearing, Plaintiff's alleged disability onset date was amended to December 15, 2009 at the request of Plaintiff. Tr. at 47-48; see Tr. at 162. Plaintiff was fifty-one years old at the time of the hearing. Tr. at 85 (indicating date of birth). The ALJ issued a Decision on November 23, 2016, finding Plaintiff not disabled through the date last insured. Tr. at 22-34.

Thereafter, Plaintiff requested review of the Decision by the Appeals Council. Tr. at 166. The Appeals Council received additional evidence in the form of a brief authored by Plaintiff's counsel. Tr. at 4, 5; see Tr. at 304-09 (brief). On November 7, 2017, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On January 3, 2018, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff makes the following arguments: 1) "[t]he Commissioner erroneously rejected the opinion of long-time treating pain management physician, Dr. [Orlando] Florete, who based his opinion in part on a [December 2009] Functional Capacity

---

[3]     Although actually completed on December 2, 2013, see Tr. at 167, the protective filing date of the application is listed elsewhere in the administrative transcript as November 30, 2013, see, e.g., Tr. at 85.

Evaluation [('2009 FCE')[4]] and years of treatment, and improperly relied on the nonexamining opinion of Dr[. Peter] Schosheim who filled out interrogatories after the hearing and who provided no explanation for his conclusions"; and 2) "[t]he Commissioner's rationale for minimizing the severity of [Plaintiff's] right shoulder condition constituted reversible error because the Commissioner incorrectly believed that the condition only existed in 2010 so appeared to have overlooked the subsequent evidence of continued symptoms and therefore incorrectly concluded that the condition was only minimally limiting after 2010." Plaintiff's Brief (Doc. No. 21; "Pl.'s Br."), filed September 19, 2018, at 1, 12-13, 21 (emphasis omitted). On December 13, 2018, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 24; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II. The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in

---

[4]     On December 15, 2009, Plaintiff underwent an FCE, Tr. at 291-93, 329-31 (duplicate), at the request of Dr. Florete, Tr. at 68, 70. The FCE is duplicated at pages 329-31 to show that it was attached to one of Dr. Florete's opinions. See Tr. at 328-31. For ease of reference, the undersigned cites the duplicate only when referring to it as an attachment to Dr. Florete's opinion.

[5]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 24-34. At step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of December 13, 2006 through his date last insured of December 31, 2011." Tr. at 24 (emphasis and citation omitted). At step two, the ALJ found that "[t]hrough the date last insured, [Plaintiff] had the following severe impairment: disorders of the spine." Tr. at 24 (emphasis and citation omitted). At step three, the ALJ ascertained that "[t]hrough the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 25 (emphasis and citation omitted).

The ALJ determined that Plaintiff had the following residual functional capacity ("RFC") through the date last insured:

> [Plaintiff could] perform sedentary work as defined in 20 [C.F.R. §§] 404.1567(a) except [Plaintiff] was limited to frequent reaching, overhead reaching, handling, fingering, feeling and pushing/pulling with the right upper extremity. [Plaintiff] was limited to occasional reaching and overhead reaching, as well as frequent handling, fingering, feeling and pushing/pulling with the left upper extremity. He is right hand dominant. [Plaintiff] can sit for 1 hour at one time, and stand/walk for 30 minutes each at one time without

interruption in an 8[-]hour work[day]. [Plaintiff] can sit for 6 hours total, stand for 1-hour total and walk for 1-hour total, all in an 8-hour workday. [Plaintiff] can operate foot controls on an occasional basis bilaterally. [Plaintiff] can never climb ladders, ropes or scaffolds. [Plaintiff] can occasionally balance, stoop, kneel, crouch, crawl and climb stairs and ramps. [Plaintiff] can tolerate no exposure to unprotected heights, moving mechanical parts and vibrations. [Plaintiff] can tolerate occasional exposure to extreme cold, extreme heat, and the operation of a motor vehicle. [Plaintiff] can tolerate frequent exposure to humidity and wetness, poorly ventilated areas, as well as environmental and pulmonary irritants, such as fumes, odors, dusts and gases. [Plaintiff] is limited to work environments with no more than a "loud" noise intensity level as defined by the Dictionary of Occupational Titles. [Plaintiff] is unable to walk a block at a reasonable pace on rough or uneven surfaces.

Tr. at 25 (emphasis omitted).

At step four, the ALJ found that "[t]hrough the date last insured, [Plaintiff] was unable to perform any past relevant work." Tr. at 32 (emphasis and citation omitted). At step five, after considering Plaintiff's age ("47 years old . . . on the date last insured"), education ("at limited education"), work experience, and RFC, the ALJ relied on the testimony of the VE and found that through the date last insured, "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed," such as "call out operator" and "surveillance system monitor," Tr. at 33 (emphasis and citation omitted). The ALJ concluded that Plaintiff "was not under a disability . . . at any time from December 13, 2006, the alleged onset date, through December 31, 2011, the date last insured." Tr. at 34 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245

F.3d 1274, 1278 (11th Cir. 2001) (citing <u>Falge v. Apfel</u>, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Falge</u>, 150 F.3d at 1322 (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As noted, Plaintiff takes issue with the ALJ's assessment of Dr. Florete's opinions and the opinions expressed in the 2009 FCE, as well as with the ALJ's evaluation of Plaintiff's shoulder impairment. These issues are addressed in turn.

## A. Medical Opinions

### 1. Parties' Arguments

Plaintiff contends that in discounting Dr. Florete's opinions, "[t]he ALJ offered multiple explanations, none of which rose to the level of good cause." Pl.'s Br. at 15. Plaintiff argues that "the ALJ failed to realize that Dr. Florete himself adopted the findings

and based his opinion on the [2009 FCE] results." Id. Plaintiff asserts the ALJ's statement that Plaintiff's reported activities conflicted with his allegations is erroneous because when Plaintiff "did try to engage in activity, he had problems and had to stop the activity." Id. at 16. As to the ALJ's observation that Plaintiff was "happy at his job," Plaintiff argues that "the ALJ failed to note that his low back pain had escalated after his work efforts and he had radiating pain down both lower extremities." Id. at 17. Plaintiff contends that "[t]he ALJ pointed to [Plaintiff's] release from his shoulder injury in 2010, but . . . the record reveals that [Plaintiff's] shoulder condition did not improve." Id. Plaintiff also argues that "the ALJ failed to address findings in Dr. Florete's records indicating positive examination findings." Id. at 19. Plaintiff asserts the ALJ erred in relying on Dr. Schosheim's opinion, which was "offered after the hearing and only upon a review of medical records." Id. at 18. According to Plaintiff, "Dr. Schosheim failed to provide specific references supporting his opinion as far as functioning." Id.

Responding, Defendant argues the ALJ found that "the limitations noted by Dr. Florete were not consistent with the objective evidence of record." Def.'s Mem. at 7 (citations omitted). Defendant contends that "[t]he ALJ also noted that Dr. Florete treated Plaintiff conservatively and surgical treatment had not been advised." Id. (citations omitted). Defendant observes that "[t]he ALJ accorded greater weight to the opinion from Dr. Schos[heim], a non-examining physician, as she believed his opinion was supported by the objective evidence." Id. (citations omitted).

## 2. Applicable Law

The Regulations[6] establish a "hierarchy" among medical opinions[7] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5) (2006)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5); see also 20 C.F.R. §§ 404.1527(f), 416.927(f).

---

[6]     On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed his claim before that date, the undersigned cites the rules and Regulations that were in effect on the date the claim was filed, unless otherwise noted.

[7]     "Medical opinions are statements from physicians or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"); 20 C.F.R. § 404.1513(a).

With regard to a treating physician,[8] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c)(2). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Schink v. Comm'r of Soc. Sec., — F.3d —, No. 17-14992, 2019 WL 4023639, at *7 (11th Cir. Aug. 27, 2019); Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the

---

[8] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Schink, 2019 WL 4023639, at *7; Hargress, 883 F.3d at 1305 (citation omitted); Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor,"

Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

### 3. Treatment with Dr. Florete and Medical Opinions / Analysis

Dr. Florete has treated Plaintiff since March 2008, mainly for pain in the neck, shoulders, and back. See Tr. at 389-92, 471-72, 491-92, 509-14, 530-626, 636-51, 662-68, 674-98, 710-15, 821-22, 892-94, 927, 934; see also Tr. at 70 (Plaintiff testifying that he has seen Dr. Florete "[f]rom 2008 until current"). Dr. Florete's opinions are contained in a June 2010 letter, see Tr. at 560-61, a May 2012 Physician's Certification, see Tr. at 328,[9] and a January 2016 letter, see Tr. at 799. Dr. Florete attached the 2009 FCE to his May 2012 Physician's Certification. See Tr. at 69-70; Tr. at 328-31.

For ease of discussion, the undersigned addresses the foregoing opinions in the following sequence: 1) the 2010 letter; 2) the 2012 Physician's Certification; 3) the 2009 FCE; and 4) the 2016 letter.

***a. The 2010 Letter:*** In the 2010 letter, Dr. Florete opined that Plaintiff was totally and permanently disabled from working in construction. Tr. at 560. Dr. Florete observed that Plaintiff fell going up the stairs in May 2010 when he experienced weakness and a "pins and needles sensation" in his left leg, which caused his left leg to give way. Tr. at 560. According to Dr. Florete, "this may further impact his work capacity due to aggravation of his pain." Tr. at 560.

---

[9] The 2012 Physician's Certification was apparently prepared in connection to a claim by Plaintiff for unemployment benefits. See Tr. at 328 (stating, "[Plaintiff] has made a claim for unemployment benefits and has named you [(Dr. Florete)] as his doctor or healthcare provider").

The ALJ gave "partial weight" to the opinions in the 2010 letter. Tr. at 30. Specifically, the ALJ found that "[t]he overall evidence supports the opinion that [Plaintiff] is unable to perform past work as a construction worker, but the overall evidence does not establish work preclusive limitations." Tr. at 30. The ALJ gave three explicit reasons for the weight given.

First, the ALJ accurately noted that "[i]n January 2011, neurosurgeon John Hawkins, M.D. examined [Plaintiff] and found that based on [Plaintiff's] lumbar images, he was not a candidate for neurosurgical intervention." Tr. at 30 (citing Tr. at 974-76); see Tr. at 976 (Dr. Hawkins indicating, "I told the patient based on the lumbar images, I do not believe I could state he required neurosurgical intervention").

Second, the ALJ pointed to objective evidence that showed only mild findings or abnormalities. Specifically, the ALJ observed that "an MRI of [Plaintiff's] thoracic spine in January 2011 showed degenerative hypertrophic spondylosis in the mid and lower thoracic spine and a 2mm focal disc protrusion at T8-9 and minimal posterior disc osteophyte complex at T9-10." Tr. at 30; see Tr. at 969. The ALJ continued, "A[n] MRI of [Plaintiff's] cervical spine showed 3mm disc herniation, C3-4 with mild mass effect upon the cervical cord and mild/moderate canal stenosis and an incidental note of small presumed atypical hemangioma within the C7 vertebra." Tr. at 30-31 (citing Tr. at 970). It is noted that another MRI test conducted during the relevant time period also revealed mostly mild findings. See Tr. at 581, 742 (duplicate).

Third, the ALJ found that "as to the subjective complaints, treatment records document a generally consistent and conservative treatment regimen with no disabling

and ongoing medication side effects, which further supports satisfactory pain control during the relevant review period through the date last insured of December 31, 2011." Tr. at 31. This finding is supported by the record. The medical evidence, including the treatment notes from Dr. Florete, indicates Plaintiff's symptoms have been generally managed with essentially routine and conservative treatment—including medication, epidural injections, and nerve blocks—with no side effects. See Tr. at 545 (March 18, 2010 treatment note indicating Plaintiff "reported that the series of the LES[10] resulted in significant reduction in his low back pain (50% reduction)"); Tr. at 562 (July 1, 2010 treatment note indicating that Plaintiff "continues to have central low back pain although less intense than the pain he had before his lumbar epidural steroid injection" and that Plaintiff's "pain medication has moderately reduced [his] pain"); Tr. at 627 (April 14, 2011 treatment note indicating Plaintiff "reports overall at least 50-60% reduction in his pain" and that Plaintiff is "stable on his meds"); Tr. at 678 (February 2, 2012 treatment note indicating Plaintiff "bought his own TENS unit out of pocket and reported it significantly helps the spasm of his neck and back muscles"); Tr. at 710 (July 26, 2012 treatment note indicating Plaintiff's "neck and midback pain are acceptably controlled with his current regimen"); Tr. at 716 (August 22, 2012 treatment note indicating Plaintiff is "stable on his pain medication that is helping" and that "[h]e is able to function without difficulty"); see, e.g., Tr. at 562, 636, 669 (July 1, 2010; June 14, 2011; and December 1, 2011 treatment notes indicating Plaintiff "reports taking [his] pain medication as prescribed with no

---

[10]     "LES" is likely an acronym for lumbar epidural steroid injections.

significant side effects"); Tr. at 571 (July 29, 2010 treatment note indicating Plaintiff's "pain medication has significantly reduced [his] pain"); Tr. at 576 (September 9, 2010 treatment note indicating Plaintiff's "pain medication has moderately reduced [his] pain"); Tr. at 756, 819, 830 (January 13, 2014; February 18, 2015; and January 20, 2015 treatment notes indicating Plaintiff is "[s]table with current medication regimen[ ]"). The ALJ also correctly noted that Plaintiff "did not require an assistive device for ambulation." Tr. at 31; <u>see</u> Tr. at 55.

Based on the foregoing, the ALJ's evaluation of Dr. Florete's 2010 letter is supported by substantial evidence.

*b.* ***The 2012 Physician's Certification:*** In the 2012 Physician's Certification, Dr. Florete stated that Plaintiff had intractable neck, back, and shoulder pain. Tr. at 328. Dr. Florete opined that it was necessary for Plaintiff to leave his job because it aggravated his pain. Tr. at 328.[11] Dr. Florete opined Plaintiff was unable to sustain full-time work and was totally, permanently disabled. Tr. at 328.

The ALJ did not specify the weight given to the opinions in the 2012 Physician's Certification, but it is clear she rejected them. The ALJ articulated specific reasons for doing so. First, the ALJ stated that "such opinions are a legal conclusion reserved to the [C]ommissioner." Tr. at 31; <u>see</u> SSR 96-5P, 1996 WL 374183, at *1. Second, the ALJ found that "the opinion was rendered after the date last insured and is inconsistent with evidence during this time period, which establishes further improvement." Tr. at 31. In

---

[11] The 2012 Physician's Certification does not specify the job that Dr. Florete opined Plaintiff needs to leave, but it is likely Dr. Florete was referring to Plaintiff's job in construction.

support, the ALJ correctly observed that "in July 2012, pain management records indicate that [Plaintiff] was back to work as a house maintenance person" and that "[w]hile [Plaintiff] reported his low back pain had escalated, he was still noted as happy in his job." Tr. at 31 (citing Tr. at 710). Contrary to Plaintiff's assertion, Pl.'s Br. at 17, the ALJ did acknowledge that Plaintiff's low back pain escalated after his work efforts, see Tr. at 31. The July 2012 treatment note also indicates Plaintiff's "neck and midback pain [were] acceptably controlled with his current regimen," that Plaintiff rated his pain level as a two out of ten, and that Plaintiff's medication had significantly reduced his pain. Tr. at 710. The ALJ further stated that "[i]n August 2012, records indicate that [Plaintiff] was stable on his medications and able to function without difficulty." Tr. at 31 (citing Tr. at 716). These findings are supported by substantial evidence.

      **c. The 2009 FCE:** The findings and opinions in the 2009 FCE are as follows. Plaintiff demonstrated consistency of performance during testing. Tr. at 291. Handgrip strength tests "revealed moderate bilateral handgrip weakness as compared to normal handgrip efforts." Tr. at 291. Plaintiff's functional capacity was "most consistent with some components of the sedentary duty physical demand level, but he might have difficulty participating on a consistent, or full[-]duty basis, due to his limited tolerance to prolonged periods of activity, with claims of utilizing intermittent lying down throughout his day totaling 2-3 hours, to assist with management of pain symptoms." Tr. at 291. Plaintiff should avoid bending, crawling, twisting, stooping, climbing ladders, and shoulder to overhead lifting. Tr. at 292. Plaintiff rated his pain level at the time of the evaluation at 3 (mild), he rated his highest level of pain at 5 (moderate), and his lowest level of pain at 3 (mild). Tr. at 293.

The ALJ gave the opinions in the 2009 FCE "little weight, as the need to lie down for 2-3 hours during a normal [workday] is inconsistent with [Plaintiff's] treatment records, course of treatment and overall evidence as discussed [in the Decision]." Tr. at 31; <u>see also</u> Tr. at 29. As an example, the ALJ accurately observed that "August 2009 records noted [Plaintiff] attempting to power wash his back porch." Tr. at 29, 31; <u>see</u> Tr. at 484.[12] The ALJ also noted that Plaintiff "injured his shoulder in May 2010, and he was released to return to work after June 2010, and with no evidence of significant restrictions from the treating source Dr. [Erica] Wong or co[-]signing nurse, after that date." Tr. at 29, 31; <u>see</u> Tr. at 317-20. This finding is supported by substantial evidence. Dr. Wong released Plaintiff to work on May 20, 2010 with restrictions, but she stated the restrictions applied only through June 20, 2010. Tr. at 320. Other than Plaintiff's allegations of shoulder pain, there is no indication that Plaintiff had any significant shoulder limitations after June 20, 2010.[13] The ALJ also found that Plaintiff's "conservative and generally consistent course of treatment with objective findings" are also inconsistent with a need to lie down for two to three hours during a workday. Tr. at 29, 31. This finding is supported by substantial evidence. <u>See</u> <u>supra</u> pp. 13-14.

  ***d. The 2016 Letter:*** In the 2016 letter, Dr. Florete opined as follows. Plaintiff has not experienced any improvement to the injuries he sustained in December 2006. Tr. at 799. Since then, Plaintiff has experienced debilitating back, neck, and lower extremity

---

[12]  Earlier in the Decision, the ALJ acknowledged that Plaintiff "reported increased pain after attempting to power wash his back porch." Tr. at 29.

[13]  Plaintiff does not challenge the ALJ's finding with regard to Plaintiff's subjective symptoms. <u>See generally</u> Pl.'s Br.

pain. Tr. at 799. Plaintiff is unable to sustain full-time work even on a sedentary basis due to his limited tolerance for prolonged periods of activity. Tr. at 799. Plaintiff needs to lie down intermittently throughout the day. Tr. at 799. Dr. Florete stated that his opinions were based on his extensive treatment of Plaintiff for several years and on the 2009 FCE. Tr. at 799.

The ALJ did not specifically discuss Dr. Florete's 2016 letter. This error, however, does not warrant remand. As noted above, the ALJ articulated good cause reasons for rejecting the opinion in the 2009 FCE that Plaintiff "might have difficulty participating on a consistent, or full[-]duty basis, due to his limited tolerance to prolonged periods of activity, with claims of utilizing intermittent lying down throughout his day totaling 2-3 hours, to assist with management of pain symptoms." Tr. at 291. This opinion is the same as Dr. Florete's opinion in the 2016 letter. <u>See</u> Tr. at 799 (opining that Plaintiff is "unable to sustain full[-]time work even on a sedentary basis due to his limited tolerance for prolonged periods of activity and need to lie down intermittently throughout the day"). The remaining opinions in the 2016 letter are similar to those in the 2010 letter, which the ALJ also properly discounted. Moreover, the ALJ discounted all the other opinions of Dr. Florete (with the exception of his opinion that Plaintiff is unable to return to work as a construction worker).[14]

---

[14]     To the extent Plaintiff argues the ALJ did not acknowledge that Dr. Florete adopted the findings in the 2009 FCE, the Court notes that the ALJ questioned Plaintiff at the hearing about the 2009 FCE and Dr. Florete's connection to it. <u>See</u> Tr. at 69-70, 72. At the hearing, the ALJ also observed that the 2009 FCE was attached to Dr. Florete's 2012 Physician's Certification. <u>See</u> Tr. at 69. Evidently, the ALJ considered Dr. Florete's connection to the 2009 FCE. Further, although not a critical point, Plaintiff's assertion that the 2009 FCE was signed by Dr. Florete, Pl.'s Br. at 15, appears to be incorrect. The "Physician's Authorization Signature" in the 2009 FCE is illegible, <u>see</u> Tr. at 291, and it is different than the signature Dr. Florete used in other documents, including his letters, <u>see</u> Tr. at 328, 389, 561, 799. In any event, the undersigned finds the ALJ properly evaluated the 2009 FCE.

With respect to Plaintiff's argument that the ALJ failed to address the positive findings in Dr. Florete's treatment notes, Pl.'s Br. at 19, the undersigned finds that the ALJ discussed the medical evidence sufficiently and considered the record as a whole. The ALJ discussed in detail Dr. Florete's March 2008 examination report, including the positive findings. Tr. at 28. The ALJ also discussed in detail the results of the multiple MRIs. Tr. at 28-30. The ALJ observed that Plaintiff underwent radiofrequency lesioning in addition to receiving injections. Tr. at 32. She acknowledged Plaintiff's report to Dr. Florete that he "had exacerbations of pain based on his level of activity." Tr. at 29. That the ALJ did not refer to every treatment note from Dr. Florete does not render the Decision unsupported by substantial evidence. See Dyer, 395 F.3d at 1211 (stating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole").

As the ALJ appropriately assessed the opinions of Dr. Florete and the opinions in the 2009 FCE, the ALJ did not err in assigning more weight to Dr. Schosheim's non-examining opinions on the basis that they are more consistent with the record as a whole. See Tr. at 31-32; Oldham, 660 F.2d 1078, 1084 (finding the ALJ was justified in relying on a non-examining physician's opinion that was consistent with the evidence, while rejecting a treating physician's opinion that was contrary to the evidence).

## B. Severity of Shoulder Impairment

### 1. Parties' Arguments

Plaintiff contends the ALJ erred in finding that Plaintiff's "shoulder condition was not severe" and that "the condition did not even cause more than minimal limitations." Pl.'s Br. at 21. According to Plaintiff, "[t]he medical records and Dr. Schosheim's identification of the condition further support that the impairment did last 12 months and also was more than minimally limiting." Id.

Responding, Defendant observes that "[t]he ALJ noted that Plaintiff was only temporarily restricted from lifting, reaching, and repetitive use of the right arm." Def.'s Mem. at 7 (citations omitted). Defendant argues that "[e]ven if Plaintiff experienced right shoulder/arm pain after June of 2010, he would need to demonstrate findings that would prevent the performance of frequent use of the right shoulder/arm." Id.

### 2. Applicable Law

Step two of the sequential evaluation process requires the ALJ to determine if a claimant suffers from a severe impairment. See 20 C.F.R. § 404.1520(a)(4)(ii). At this step, "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work[.]" Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). In the context of a Social Security disability benefits case, a condition is severe if it affects

a claimant's ability to maintain employment. See id. Further, "[t]he severe impairment either must have lasted or must be expected to last for at least 12 months." Davis v. Barnhart, 186 F. App'x 965, 967 (11th Cir. 2006) (unpublished) (citing Barnhart v. Walton, 535 U.S. 212, 216 (2002)).

A severe impairment interferes with a claimant's ability to perform "basic work activities." See Bowen, 482 U.S. at 141. The Code of Federal Regulations provides six examples of "basic work activities": (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers, and unusual work situations; and (6) Dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b); see also Davis, 186 F. App'x at 966-67.

### 3. Analysis

Here, as noted above, the ALJ found at step two that Plaintiff has a severe impairment of "disorders of the spine." Tr. at 24 (emphasis and citation omitted). The ALJ explicitly considered Plaintiff's "history of a right shoulder sprain" and found that Plaintiff "was given temporary restrictions." Tr. at 24. The ALJ found "this impairment to be non[-]severe, as it did not cause more than minimal functional limitations for 12 continuous months or more during the relevant period from the amended alleged onset date through the date last insured." Tr. at 24-25.

The ALJ did not err in finding Plaintiff's shoulder impairments to be non-severe. The ALJ clearly considered at later steps Plaintiff's shoulder impairment. See Tr. at 26-29, 31.

The ALJ observed that Plaintiff testified "he had left shoulder surgery in 2007 and is unable to lift his arm above shoulder level." Tr. at 26-27. The ALJ stated that when Plaintiff was working, he fell from a ladder, "landed with his left shoulder and was rotated and bent over." Tr. at 28. The ALJ observed that in March 2008, Plaintiff was diagnosed with "left shoulder pain." Tr. at 28. The ALJ then noted that in May 2010, Plaintiff injured his shoulder. Tr. at 29. As noted above, the ALJ correctly found that Plaintiff was then "released to return to work after June 2010 with no evidence of significant restrictions from the treating source Dr. Wong or co-signing nurse, after that date." Tr. at 29; see Tr. at 320. The medical evidence after June 2010 does not show any further restrictions associated with Plaintiff's shoulder. See, e.g., Tr. at 649, 685 (August 11, 2011 and March 1, 2012 treatment notes indicating, "Palpation of Arm and Right Shoulder reveals the acromioclavicular joint is tender with no swelling and the bicipital tendon is tender with no swelling").

Moreover, any error in failing to find an impairment severe at step two would be harmless here given that the ALJ found in favor of Plaintiff at step two. In this Circuit, "[e]ven if the ALJ erred in not indicating whether [a condition] was a severe impairment, the error [is] harmless because the ALJ concluded that [the plaintiff] had a severe impairment[ ] and that finding is all that step two requires." Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 824-25 (11th Cir. 2010) (citing Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1991)).

## V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

2.    The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 26, 2019.

_James R. Klindt_
**JAMES R. KLINDT**
United States Magistrate Judge

bhc
Copies to:
Counsel of Record